1  **GUTRIDE SAFIER LLP**
   MARIE A. MCCRARY (Bar No. 262670)
2  marie@gutridesafier.com
   SETH A. SAFIER (Bar No. 197427)
3  seth@gutridesafier.com
   100 Pine Street, Suite 1250
4  San Francisco, CA 94111
   Telephone: (415) 639-9090
5  Facsimile: (415) 449-6469

6  Attorneys for Plaintiff

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10

11 SIERRA CLUB,                          Case No.: _____

12          Plaintiff,                   **COMPLAINT FOR UNFAIR BUSINESS
                                         PRACTICES AND VIOLATION OF THE
13      v.                               ENVIRONMENTAL MARKETING
                                         CLAIMS ACT**
14 THE COCA-COLA COMPANY and
   BLUETRITON BRANDS, INC.,

15          Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-
COMPLAINT

Plaintiff Sierra Club, by and through its counsel, brings this Complaint against Defendants The Coca-Cola Company and BlueTriton Brands, Inc. (formerly known as Nestle Waters North America, Inc.). The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.      This Complaint seeks to remedy Defendants' unlawful, unfair, and deceptive business practices with respect to the advertising, marketing, and sale of water bottled in single-use plastic bottles labeled as "100% Recyclable."

2.      Americans consume water from disposable plastic bottles at a rate of more than 70 million bottles each day.[1] Defendants produce more than 100 billion single-use plastic bottles every year – or 3,400 a second.[2] Over 60 million plastic bottles end up in landfills or incinerators each day.[3] Incineration of plastic releases large quantities of greenhouse gases and toxic air emissions. Over 12 million tons of plastic enters the ocean each year.[4] As consumers have become increasingly aware of the problems associated with plastic pollution, many consumers actively seek to purchase products that are either compostable or recyclable to divert such waste from waterways, oceans, their communities, landfills, and incinerators.

3.      The plastic waste problem was exacerbated in 2018 when China implemented a plastic recycling import ban on most plastic waste exported from the United States, which it deemed the "National Sword" policy. The National Sword policy has permanently changed how the United States processes recycling. Up until 2018, China was the primary export market for

---

[1] Pat Franklin, *Down the Drain*, https://www.container-recycling.org/assets/pdfs/media/2006-5-WMW-DownDrain.pdf (last accessed January 20, 2021).

[2] Sandra Laville and Matthew Taylor, *A million bottles a minute: world's plastic binge 'as dangerous as climate change'* (June 28, 2017), https://www.theguardian.com/environment/2017/jun/28/a-million-a-minute-worlds-plastic-bottle-binge-as-dangerous-as-climate-change (last accessed January 20, 2021)

[3] *Id.*

[4] Nick Young, *How does plastic end up the ocean?*, https://www.greenpeace.org/new-zealand/story/how-does-plastic-end-up-in-the-ocean/ (last accessed January 20, 2021).

1    plastic waste. In the wake of National Sword, municipalities have been forced to find new ways

2    to manage plastic recycling. In most cases, they have been forced to burn or incinerate plastics

3    because there is no longer a foreign market for the overwhelming majority of plastic sent for

4    recycling.

5        4.      In the wake of National Sword, environmental organizations such as the Sierra

6    Club and Greenpeace sought to inform the public that reusable bottles are the only truly

7    sustainable choice. Concerned about the growing salience of this message and seeking to

8    reassure the public about the sustainability of single-use plastics—Defendants and other plastic

9    bottlers countered with the "Every Bottle Back" initiative. Central to this marketing campaign is

10   the claim "100% Recyclable," which Defendants affix to their single-use plastic water bottles.

11   However, the plastic bottles are not "100% Recyclable" because: (i) the polypropylene ("PP")

12   bottle caps and the biaxially oriented polypropylene ("BOPP") plastic labels on the bottles are

13   not recyclable and cannot be processed into usable material; (ii) at least 28% of the polyethylene

14   terephthalate ("PET") bottles and high-density polyethylene ("HDPE") bottle caps sent to

15   recycling centers are lost in processing or are contaminated and thus end up in landfills or are

16   burned; and (iii) domestic recycling facilities only have the capacity to process approximately

17   22.5% of the PET and HDPE consumed in the United States.

18       5.      Defendants' continued use of misleading and deceptive recyclability claims on

19   their products serves to defraud the public about plastic water bottles. It falsely informs

20   consumers that they are making an environmentally responsible choice when they purchase and

21   dispose of Defendants' plastic water bottles in a municipal recycling bin. In truth, Defendants'

22   single-use plastics are damaging the environment even when consumers properly dispose of the

23   bottles in a recycling bin. If consumers knew the truth, they could make more informed

24   decisions about consuming products that are truly sustainable. Defendants' representations that

25   the Products are recyclable are material, false, misleading, and likely to deceive members of the

26   public. These representations also violate California's legislatively declared policy against

27   misrepresenting the environmental attributes of products.

28       6.      This action seeks an injunction precluding the sale of the plastic bottled water

within a reasonable time after entry of judgment, unless the products' packaging and marketing are modified to remove the "100% Recyclable" misrepresentation and to disclose the omitted facts about their true recyclability. If an injunction is not granted, Plaintiff will suffer irreparable injury because it will continue to spend money, staff time and other organizational resources to combat Defendants' false and misleading representations in California and to inform the public that the Products are not recyclable in California. In addition, plastic pollution caused by Defendants' sale of the Products in California and the resulting harms to California waters, coasts, communities, and marine life will continue to negatively impact Plaintiff's efforts to protect these critical resources.

## PARTIES

7.     Plaintiff Sierra Club ("Plaintiff" or the "Sierra Club ") was founded in 1892 and is the nation's oldest grassroots environmental organization. The Sierra Club is incorporated in California, and has its headquarters in Oakland, California. It has more than 784,000 members nationwide. The Sierra Club's mission is "[t]o explore, enjoy and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out those objectives." Consistent with its mission, the Sierra Club is dedicated to the protection and preservation of environment, including but not limited to, ending the use of single-use plastics and combatting false and misleading environmental claims on consumer goods (i.e. greenwashing).

8.     The Sierra Club has standing to bring this action because Defendants' misrepresentations regarding the environmental benefits of their Products by marketing and selling the Products as recyclable in California have frustrated the Sierra Club's organizational mission to "protect the wild places of the earth" and to "educate and enlist humanity to protect … the natural and human environment." Well before this litigation was initiated, the Sierra Club expended money, staff time, and diverted organizational resources in California in response to that frustration of purpose (described in greater detail *infra*). The Sierra Club's diversion of resources to respond to Defendants' misrepresentations regarding the recyclability of the

Products has caused the Sierra Club to postpone other projects that could advance the Sierra Club's mission. Thus, the Sierra Club has lost money or property and has suffered an injury in fact due to Defendants' actions of using false, misleading and deceptive labels regarding the recyclability of its Products in California.

9.    Defendant The Coca-Cola Company ("Coca-Cola") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

10.    Defendant BlueTriton Brands, Inc. ("Nestle") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Stamford, Connecticut. BlueTriton Brands, Inc. is the successor entity to Nestle Waters North America, Inc.

11.    The Parties identified in paragraphs 9-10 of this Complaint are collectively referred to hereafter as "Defendants."

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a). The aggregate amount in controversy exceeds $75,000, exclusive of interest and costs; and there is complete diversity of citizenship between Plaintiff and Defendants.

13.    This action is brought by Plaintiff pursuant, *inter alia*, to the California Business and Professions Code, section 17200, *et seq.* Plaintiff and Defendants are "persons" within the meaning of the California Business and Professions Code, section 17201.

14.    The injuries, damages and/or harm upon which this action is based occurred in or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, including within this District.

15.    The claims in this case arise out of Defendants' California-related activities. Defendants market and sell the Products in California to California consumers. While the

Products are marketed and sold in California by Defendants, the Products are not 100% recyclable in California. The Sierra Club has spent significant money, staff time, and other organizational resources in California to counter Defendants' false and misleading recyclability representations. Thus, the conduct alleged herein arises out of Defendants' activities in California.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

17.    Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### (1) Defendants and the Products at Issue

18.    Coca-Cola manufacturers, markets, and sells beverages, including bottled water, in the United States under several brand names, including Dasani.

19.    Nestle manufacturers, markets, and sells beverages, including bottled water, in the United States under several brand names, including Arrowhead, Poland Springs, Ozarka, and Deer Park.

20.    The following brands of bottled water are referred to herein as the "Products": Dasani, Arrowhead, Poland Springs, Ozarka, and Deer Park.

21.    Each of the Products have three basic plastic components: the bottle, the bottle cap, and the label that is wrapped around the bottle. The bottles are made of polyethylene terephthalate (PET, #1 plastic). The Products' bottle caps are made of polypropylene (PP, # 5 plastic) or high-density polyethylene (HDPE, #2 plastic). The Products' labels are made from biaxially oriented polypropylene (BOPP), a form of PP.

22.    Throughout the class period, Defendants have consistently marketed on the Products' packages that they are "100% Recyclable" as shown in the following images.

23.     Dasani:



24.     Arrowhead:



1
2
3      25.      Poland Springs:
4
5
6
7
8
9
10
11
12
13
14



15     26.      Ozarka:
16
17
18
19
20
21
22
23
24
25
26
27
28




1
2
3          27.     Deer Park:
4
5
6
7
8
9
10
11
12
13
14
15
16



17      **(2) Defendants' Representations that the Products Are "100% Recyclable" Are**
18      **False**

19          28.     Pursuant to California law, recycling is "the process of collecting, sorting,

20      cleansing, treating, and reconstituting materials that would otherwise become solid waste, and

21      returning them to the economic mainstream in the form of raw material for new, reused, or

22      reconstituted products which meet the quality standards necessary to be used in the

23      marketplace." Cal. Pub. Res. Code § 40180. Thus, "recyclable" products must, if discarded into a

24      recycling bin, be: (i) accepted for collection by a recycling facility; and (ii) processed for reuse

25      or use in manufacturing another item.

26          29.     In California, after plastic bottles, such as the Products, are discarded into a

27      recycling bin, the bottles are sent to a Materials Recovery Facility ("MRF"). There are

28      approximately 365 MRFs in the United States (75 of which operate in California). A typical

MRF first sorts the plastic bottles based on color and, sometimes, size. At this point, the plastic bottles, bottle caps and labels are comingled. Once sorted, the comingled plastic is typically next shredded into smaller pieces and sent to a wash station. During the washing phase, the comingled shredded plastic is separated via a sink float separation tank, where the PET plastic, which is denser than water, sinks and the HDPE and PP plastics, which are less dense than water, float. Finally, the separated shredded plastic is then processed into "clean flake" material or plastic resin for use in manufacturing or assembling another item.

30.     PET and HDPE are widely considered to be the "most recyclable" forms of plastic. However, the most recent available data, which was published in a study by Greenpeace, indicates that as of 2017, United States domestic MRFs only have the capacity to process into plastic resin approximately: (i) 22.5% of the total post-consumer PET plastic waste generated; and (ii) 12% of the total post-consumer HDPE plastic waste generated.[5] Additionally, due to contamination and processing losses, not all PET and HDPE material that is processed by MRFs is actually converted into "clean flake" for reuse.[6] About a third of the collected PET and HDPE material processed by MRFs is not converted into "clean flake," and is instead, landfilled or incinerated.[7] Accordingly, the Products' PET bottles and HDPE bottle caps are not "100% Recyclable" because: (i) the United States lacks the capacity to process 77.5% of all PET and 88% of all HDPE plastic waste generated; and (ii) of the plastic that is processed by MRFs, only about 70% of the PET and HDPE is converted into clean flakes for reuse.

31.     PP and BOPP plastics, which are the material used to make the Products' bottle caps and film labels, respectively, are widely considered to be the least recyclable plastics. These plastics are typically collected by MRFs for #3-7 mixed bails which require further processing.

---

[5] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (last accessed December 18, 2020); at Section 7.2.2.
[6] Jan Dell, *Six Times More Plastic Waste is Burned in U.S. than is Recycled* (April 30, 2020), https://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-us-than-is-recycled (last accessed June 10, 2021).
[7] *Id.*

1    However, "the economics [of processing those bails] have proven insurmountable."[8] Prior to

2    2018, MRFs in the United States exported #3-7 mixed bails, primarily, to China. However, on

3    January 1, 2018, China enacted the National Sword policy which limits plastic waste imports.

4    There is, however, minimal demand, value, and processing capacity for them in the United

5    States. Thus, mixed plastic #3-7 bales which were "previously exported to China now have

6    negligible to negative value across the country and 'cannot be effectively or efficiently recycled

7    in the US.'"[9] As a result, the majority of PP and BOPP sent to recycling facilities is incinerated,

8    which releases large quantities of greenhouse gases and toxic air emissions. This is especially

9    true of the Products' BOPP labels which are completely unrecyclable because they are made of

10   plastic film, which is difficult to sort and process and is typically treated as trash.

11          32.     Further, due to the availability of cheap raw materials to make "virgin plastic,"

12   there is very little market demand for recycled PP and BOPP plastic. Using virgin plastic to

13   package and make products is cheaper than other materials because virgin plastic is derived from

14   oil and natural gas. Indeed, recognizing the market potential from plastic production, major oil

15   and natural gas companies are increasingly integrating their operations to include production of

16   plastic resins and products, which further drives down the price of "virgin plastic." As a result,

17   recycling facilities cannot afford the cost of breaking down and reconstituting recycled PP and

18   BOPP plastic because there are almost no buyers of the resulting plastic, pellets, or scrap

19   materials. Thus, the Products' PP bottle caps and BOPP labels are not "100% Recyclable"

20   because those materials are not processed into reusable material, and are instead, sent to

21   incinerators or landfills.

22          33.     Even when plastic bottle lids are made of HDPE (#2) plastic instead of PP (#5), a

23   significant portion of them are lost during the sorting process because they fall through disk

24   screens during the initial sorting process at the MRF. As a result, most caps are not recyclable

25   regardless of whether they are made from No. 2 or No. 5 plastic because they are too small to be

26   efficiently sorted and processed.

---

[8] *Supra*, note 5, at Section 4.
[9] *Id.*

**(3) Defendants' Marketing of the Products Violates California Public Policy and the Federal Trade Commission Green Guides**

34.     The State of California has declared that "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." Cal. Pub. Res. Code § 42355.5. The policy is based on the Legislature's finding that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs." *Id.* § 42355.

35.     Additionally, the California Business and Professions Code § 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Pursuant to that section, the term "environmental marketing claim" includes any claim contained in the Guides for Use of Environmental Marketing Claims published by the Federal Trade Commission (the "Green Guides"). *Id.*; *see also* 16 C.F.R. § 260.1, *et seq.* As detailed below, Defendants' marketing of the Products as "100% Recyclable" violates several provisions of the FTC's Green Guides.

36.     First, Defendants' marketing of the Products as "100% Recyclable" violates the Green Guides provisions prohibiting the labeling of products as recyclable unless the products can actually be converted into reusable material. Section 260.12(a) of the Green Guides provides that it is "deceptive to misrepresent, directly or by implication, that a product or package is recyclable. A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." The Green Guides further explain that "[m]arketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers." 16 C.F.R. § 260.12(b). "If recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims."16 C.F.R. § 260.12(b)(1). Further "[i]f any component

significantly limits the ability to recycle the item, any recyclable claim would be deceptive." 16 C.F.R. § 260.12(d). And in promulgating the current recycling definition, the FTC clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product will be converted into, or used in, another product or package." See 63 Fed. Reg. 84, 11 24247 (May 1, 1998) (emphasis added). As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id.*, at 24243.

37.     In promulgating the most recent version of the Green Guides, the FTC stated (under the heading "Packages Collected for Public Policy Reasons but Not Recycled"), "[t]he Commission agrees that unqualified recyclable claims for categories of products that municipal recycling programs collect, but do not actually recycle, may be deceptive. To make a non-deceptive unqualified claim, a marketer should substantiate that a substantial majority of consumers or communities have access to facilities that will actually recycle, not accept and ultimately discard, the product. As part of this analysis, a marketer should not assume that consumers or communities have access to a particular recycling program merely because the program will accept a product." The California Public Resources Code similarly defines recycling as "the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace." *Id.* § 40180.

38.     Defendants' marketing of the Products as "100% Recyclable" violates these provisions of the Green Guides because it is false that 100% of the Products can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item. Although the Products may be accepted for recycling by some curbside programs, MRFs do not have the capacity to: (i) process the Products' PP bottle caps and BOPP labels into reusable material because there is no end market to do so; (ii) convert all plastic bottle material processed into reusable material because 28% of the material is contaminated or lost during processing and must be landfilled or

incinerated; and (iii) process all plastic bottles used in the United States into reusable material such that over 75% of PET and HDPE plastics consumed must be landfilled or incinerated;

39.     Defendants' marketing of the Products as "100% Recyclable" also violates the Green Guide provisions regarding products that cannot be recycled in their entirety. Section 260.12(c) of the Green Guides provides that "Marketers can make unqualified recyclable claims for a product or package if the entire product or package, excluding minor incidental components, is recyclable. For items that are partially made of recyclable components, marketers should clearly and prominently qualify the recyclable claim to avoid deception about which portions are recyclable." Similarly, Section 260.3(b) of the Green Guides requires an environmental marketing claim to "specify whether it refers to the product, the product's packaging, a service, or just to a portion of the product, package, or service." 16 C.F.R. § 260.3(b). Defendants' "100% Recyclable" representation violates this standard of the Green Guides because it fails to specify whether it refers to the bottles, the bottle caps, or the label. The caps and the labels are not an incidental component, and even if they were, the fact that they are not recyclable makes the claim "100% Recyclable" false and misleading.

40.     Further, the Green Guides require marketers to support their claim with a reasonable basis before they make the claims. 16 CFR § 260.2 ("Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims."). "[A] firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act." *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984) (cited by 16 CFR § 260.2). Defendants do not possess information sufficient to support their claims that the Products are "100% Recyclable."

**(4) Consumer Demand for "100% Recyclable" Products and Defendants' Use of Coordinated Marketing Campaigns, including the "Every Bottle Back Initiative," to Defraud the Public**

41.     Recent investigations into the proliferation of plastic pollution have revealed that

for decades the plastic industry sold the public on the myth "that the majority of plastic could be, and would be, recycled – all while making billions of dollars selling the world new plastic." On September 11, 2020, National Public Radio ("NPR") published an investigation illustrating the plastic industry's decades-long awareness that recycling would not keep plastic products or packaging out of landfills, incinerators, communities, or the natural environment.[10] In a 1974 speech, one industry insider stated "there is serious doubt that [recycling plastic] can ever be made viable on an economic basis."[11] Larry Thomas, former president of the Society of the Plastic Industry (known today as the Plastics Industry Association), told NPR that "if the public thinks that recycling is working, then they are not going to be as concerned about the environment."[12] The NPR investigative report details the length and expense that the plastics industry went to deceive consumers that plastic was easily recyclable, despite knowledge that the cost of recycling would never be economical.

42.     Beverage manufacturers, including Defendants, have supported these efforts for years. For example, until recently, Coca-Cola was a major financial supporter of the Plastics Industry Association (PLASTICS). PLASTICS is a trade association that has lobbied against bans on single-use plastic, arguing that the problem of plastic waste is "behavioral rather than [a] material issue" because single-use plastics are 100% Recyclable. Though PLASTICS keeps its membership rolls secret, major companies have been outed over the years for their support of the organization.

43.     In 2018, after the implementation of National Sword, environmental organizations such as the Sierra Club and Greenpeace began applying greater pressure to the plastics industry through public information campaigns. The central message was that the recycling system is broken and that reuse was the only truly sustainable option. For example, a January 19, 2018 press release on the Greenpeace website titled *Greenpeace slams Coca-Cola plastic*

---

[10] Lara Sullivan, *How Big Oil Misled The Public Into Believing Plastic Would be Recycled*, NPR.ORG (Sep. 11, 2020, 5:00 a.m.), https://www.npr.org/2020/09/11/897692090/how-big-oilmisled-the-public-into-believing-plastic-would-be-recycled (last accessed Dec. 7, 2020).
[11] *Id.*
[12] *Id.*

*announcement as 'dodging the main issue'* stated:

> Greenpeace is urging Coca Cola to make firm commitments to cut its plastic production by investing in alternatives to single-use plastic bottles, including committing to expand its use of new delivery methods such as Freestyle dispensers and self-serve water stations with reusable containers.[13]

44.     On July 23, 2019, in response to pressure from the Sierra Club and similar organizations, Coca-Cola started a marketing counter-offensive. It began by announcing its "plan to end their memberships with the Plastics Industry Association."[14]

45.     On October 29, 2019—three months after breaking ties with the PLASTICS lobby—Coca-Cola, and the American Beverage Association launched the "Every Bottle Back" initiative to once again attempt to convince the public that single-use plastics are not bad for the environment. The stated purpose of this initiative is to support what the members call the "circular plastics economy," which perpetuates the fiction that plastic bottles are "100% Recyclable" and are part of a sustainable, circular plastics economy. However, this media strategy is nothing but a retooled version of their original media strategy. Instead of supporting plastic trade groups, Defendants have found a more palatable way to achieve the same goal of deceiving the public about the sustainability of single-use plastics. The "Every Bottle Back" campaign uses same rhetoric championed by PLASTIC trade groups—i.e. that the problem of plastic waste is largely behavioral and can be solved through public education that plastic bottles are 100% Recyclable.

46.     Defendants' strategy has remained unchanged: to convince the public that plastic bottles are 100% Recyclable, all while increasing profits selling the world new plastic. This is confirmed by a recent brand audit by Break Free From Plastic, a non-governmental organization that advocates against the use of single-use plastics. For the past three years, Break Free From

---

[13] Perry Wheeler, *Greenpeace slams Coca-Cola plastic announcement as 'dodging the main issue'*, Greenpeace (Jan. 19, 2018), https://www.greenpeace.org/usa/news/greenpeace-slams-coca-cola-plastic-announcement-as-dodging-the-main-issue/ (last visited Apr. 7, 2021).
[14] Perry Wheeler, *Industry giants Coca-Cola and PepsiCo ditching pro-plastics lobbying association,* Greenpeace (Jul. 23, 2019), https://www.greenpeace.org/usa/news/industry-giants-coca-cola-and-pepsico-ditching-pro-plastics-lobbying-association/#:~:text=Washington%2C%20DC%20%E2%80%93%20As%20pressure%20mounts,advocated%20against%20plastic%20bans%20nationwide (last visited Apr. 7, 2021).

1   Plastic has ranked PepsiCo, Coca-Cola, and Nestle as the top plastic polluters in the world. In its
2   2020 audit, Break Free From Plastic reported "[d]espite clever marketing tactics and lofty
3   'sustainability' goals, the same companies continue to make our list of Top Global Polluters year
4   after year."

5        47.    To make matters worse, during the COVID-19 crisis, as the demand for
6   petroleum-derived fuels has dramatically decreased, the petrochemical industry has tried to make
7   up for lost revenue by increasing sales of plastic. Environmental organizations have recognized
8   that "the struggling fossil fuel industry sees plastic production as a lifeline for maintaining its
9   profits as demand in the electric and transportation sector drops."[15] In turn, the plastic industry
10  began a public relations campaign claiming that using reusable products would increase the risk
11  of contracting the virus and that consumers should instead use single-use plastics.

12       48.    Defendants have been more than willing to oblige in perpetuating the falsehood
13  that their single-use plastic bottles are 100% Recyclable. The "Every Bottle Back" website
14  includes the following representation:

15

16

17  **OUR NEW INITIATIVE:**
    **TOGETHER, WE'RE COMMITTED**
18  **TO GETTING *EVERY BOTTLE***
    ***BACK***
19
      We are making
20  Our plastic bottles are made to be remade. We are carefully designing
    them to be 100% recyclable – even the caps. Our goal is for every bottle to   **100%**
21  become a new bottle, and not end up in oceans, rivers, beaches and
    landfills. And that means we are using less new plastic.                        recyclable plastic bottles.
22                                                                                   And we want them back.

23          https://www.innovationnaturally.org/plastic/

24  _____
    [15] Hillary Larson, *The Deep Injustice of Plastic Pollution* (July 30, 2020),
25  https://www.sierraclub.org/articles/2020/07/deep-injustice-plastic-pollution (last accessed June
    10, 2021).
26

27

28

# MORE EFFICIENT RECYCLING MEANS LESS NEW PLASTIC IN OUR ENVIRONMENT.

We're making 100% recyclable plastic bottles, and that's a critical first step. But it only helps the environment if we get them back so they don't end up in oceans, rivers and beaches. So we're working hard to support strong recovery and recycling systems across the country.

https://www.innovationnaturally.org/recycling/

49.     The misrepresentation that plastic bottles are "100% Recyclable" is repeated throughout the website with language such as "[w]e've made our plastic bottles to be 100% recyclable, including the caps."

50.     To lend credibility to the initiative, the ABA and its partners provided over a 100 million dollars in funding to The Recycling Partnership and Closed Loop Partners. The website also references support from the World Wildlife Fund's corporation activation hub, Resource: Plastic.

51.     The most important part of the "Every Bottle Back" initiative is the coordinated use of the "100% Recyclable" claim. As the website explains, the major feature of the campaign is a "public awareness campaign to help consumers understand the value of 100% recyclable bottles" and the use of "a new voluntary on-pack message to promote the recyclability of our plastic bottles and caps." The American Beverage Association website further elaborates that the beverage makers are "[w]ork[ing] together to leverage our packaging to remind consumers that our bottles are 100% recyclable and can be remade into new bottles. Beverage companies will begin introducing voluntary messaging on packages in late 2020."

52.     All Defendants have adopted the voluntary "100% Recyclable" language as a part

of a coordinated scheme to defraud the public and have benefited from the "Every Bottle Back"

public awareness campaign designed to do the same.

53.     Defendants market the Products as "100% Recyclable" to capitalize on consumer

demand for "green" products. In particular, Defendants intend for reasonable consumers to

believe, and reasonable consumers do believe, that the Products will be recycled in their entirety

if the consumer disposes of the empty bottles in a recycling bin. Further, Defendants intend for

consumers to believe, and reasonable consumers do believe, that because the Products are "100%

Recyclable," the bottles are specially designed to be environmentally superior to competitors'

products that do not contain the same representation. Finally, Defendants intend for consumers to

believe, and reasonable consumers do believe, that because the Products are part of a circular

plastics economy in which all bottles are recycled into new bottles to be used again.

54.     Defendants' coordinated and illegal marketing campaign has been extremely

successful. Defendants collectively sell a large percentage of the bottled water sold in the United

States. The Products are sold in grocery stores, gas stations, and big box stores throughout

California and the country. Because of the big potential for sales, Defendants have no incentive

to stop claiming that the Products are "100% Recyclable" or change their disclaimers to

discourage sales.

55.     Because consumers are led to believe the bottles are "100% Recyclable," and

therefore purchase them because they are a "green" product, Defendants are able to charge a

premium for the Products. If consumers knew that the Products were not "100% Recyclable," the

product would not command a premium price based on that representation, fewer consumers

would purchase them, and consumers would not pay the premium attributable to that

representation.

**(5) Defendants' Misrepresentations Frustrate the Sierra Club's Mission And Force**
**It To Divert Resources**

56.     The Sierra Club's mission is to "[t]o explore, enjoy and protect the wild places of

the earth; to practice and promote the responsible use of the earth's ecosystems and resources; to

educate and enlist humanity to protect and restore the quality of the natural and human

1   environment; and to use all lawful means to carry out those objectives."

2       57.     The Sierra Club achieves its mission by mobilizing a community of 3.8 million

3   members, supporters, and grassroots volunteers to bring attention to practices by governments

4   and major companies that threaten the planet. The Sierra Club rallies its volunteers through the

5   use of petitions, protests, and other events. Additionally, the Sierra Club uses its network to

6   pressure and advocate for change through legislation and strategic lawsuits. The Sierra Club's

7   efforts have secured protection for hundreds of parks and monuments and led to the passage of

8   landmark legislation such as the Clean Air Act and the Endangered Species Act. The Sierra Club

9   has tremendous credibility and influence with the public as the oldest conservation organization

10  in the country.

11      58.     Another integral component of the Sierra Club's operations in furtherance of its

12  mission is to educate the public regarding environmental issues. It achieves this through hosting

13  movie screenings, events, and publishing newsletters and magazines such as *Sierra*, the national

14  magazine of the Sierra Club. The Sierra Club believes that if the public is properly informed, it

15  will act responsibly to protect the planet.

16      59.     The Sierra Club's mission is directly frustrated by Defendants' manufacture, sale,

17  and false marketing of single-use plastic bottles as "100% Recyclable" for at least two reasons.

18  First, the manufacture and use of single-use plastic bottles is detrimental to the environment

19  because the overwhelming majority of those bottles end up in landfills or are incinerated. This

20  negatively impacts humans, animals and ecosystems and is directly antagonistic to the Sierra

21  Club's express mission to "protect the planet." Second, the claim that the single-use bottles are

22  "100% Recyclable" undermines the Sierra Club's mission to "educate and enlist humanity to

23  protect" the natural environment because it falsely implies that the use of plastic bottles is

24  sustainable. If the public is not properly educated and informed about the consequences of their

25  actions—that plastic bottles are not "100% Recyclable" and that a substantial portion of the

26  bottles are not recycled, and instead, ends up in rivers, waterways and landfills—they cannot

27  make environmentally responsible choices.

28

60.     The Sierra Club has expended considerable resources to combat Defendants'

misrepresentations. In particular, during the past two years, the Sierra Club has diverted

substantial volunteer and staff hours to support legislation in California that prohibits false

recycling claims and supports the use of reusable bottles, including SB 343 and AB 962.

61.     SB 343, the Truth in Labeling for Recyclable Materials law, addresses the

mislabeling of products as recyclable. The measure expands on the "Truth in Environmental

Advertising" law that prohibits the use of the word "recyclable" on unrecyclable products or any

other suggestion that a material is recyclable unless the material is actually recyclable in most

California communities and is routinely sold to make new products. The bill declares that it is

the "public policy of the state that claims related to the recyclability of a plastic product be

truthful." Pub. Resources Code, § 42355.5 (proposed amendment).[16] It further requires that

companies keep evidence supporting the validity of any "use of a chasing arrows symbol" or

claim that otherwise "direct[s] a consumer to recycle a consumer good" including documentation

regarding "[t]he reasons the person believes the representation to be true;" "[a]ny significant

adverse environmental impacts directly associated with the production, distribution, use, and

disposal of the consumer good;" "[a]ny measures that are taken by the person to reduce the

environmental impacts directly associated with the production, distribution, and disposal of the

consumer good;" "[v]iolation of any federal, state, or local permits directly associated with the

production or distribution of the consumer good;" "[w]hether, if applicable the consumer good

conforms with the uniform standards contained in the Federal Trade Commission Guidelines for

Environmental Marketing Claims for the use of the term 'recycled,' 'recyclable,' 'biodegradable,'

'photodegradable,' or 'ozone friendly.,'" and "[i]f he person uses the term 'recyclable,' uses a

chasing arrows symbol, or otherwise directs consumers to recycle the consumer good, whether

the consumer good meets all of the criteria for statewide recyclability pursuant to Section

42355.51 of the Public Resources Code." Bus. & Prof. Code § 17580 (proposed amendment).

---

[16] Proposed Text of SB 343 available at:
https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202120220SB343 (last
visited May 26, 2021).

The bill further empowers the state of California to create a list of the "types and forms of plastic products and packaging for which a claim of recyclability, including the use of a chasing arrows symbol, may be made." Pub. Resources Code, § 42355.51(d) (proposed amendment).

62.     SB 343 directly combats Defendants' "100% Recyclable" claim because it places greater restrictions on the types and forms of plastic products and packaging for which a claim of recyclability can be made unless it is truly recyclable. Although California has already made it clear that deceptive environmental claims are against public policy, this bill specifically targets false recyclability claims, such as Defendants' "100% Recyclable" claim, by expressly stating that it is against the public policy of the state of California to make false "claims related to the recyclability of a plastic product." Pub. Resources Code, § 42355.5 (proposed amendment). Additionally, it requires Defendants to, *inter alia*, keep detailed records relating to its recyclability claims.

63.     In or around March 2021, the Sierra Club internally designated the SB 343 as high-priority because of its importance in achieving the Sierra Club's mission and to counteract false recycling claims such as "100% Recyclable" that appear on the Products. The Sierra Club has since drafted and submitted a letter of formal support of the legislation and advocated in favor of the bill at legislative hearings.

64.     AB 962, the California Beverage Container Recycling and Litter Reduction Act, would provide for increased bottle deposits and a system for processing and washing reusable bottles. The purpose of this bill is to reduce waste generated from single-use bottles such as those made by Defendants by creating an alternate system of reusable bottles.[17] The Sierra Club's response to Defendant's deceptive practices has been, in part, to educate the public that reusable containers are the only truly sustainable way to consume water. This law provides a convenient and viable system for reusing bottles.

---

[17] Proposed Text of AB 962 available at:
https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202120220AB962 (last visited May 26, 2021).

65.     AB 962 directly combats Defendants' false "100% Recyclable" claim by offering an alternative to single-use bottles. AB 962 creates a new system so that manufacturers of water bottles can offer truly sustainable and convenient bottled water to the public and addresses the root cause of the problem, i.e. that plastic water bottles cannot be fully recycled into new materials.

66.     In or around March 2021, the Sierra Club internally designated the AB 962 as high-priority because of its importance in achieving the Sierra Club's mission and to counteract false recycling claims such as "100% Recyclable" that appear on the Products. The Sierra Club has since drafted and submitted a letter of formal support of the legislation and advocated in favor of the bill at legislative hearings.

67.     In addition, to the Sierra Club's lobbying efforts, on June 1, 2021, the Sierra Club California Zero Waste Committee tweeted the following on its twitter account:

> Is this @ArrowheadWater bottle including its cap and label really 100% recyclable? Would they be recycled?
> @SierraClubCA supports SB343 Truth in Labeling for Recyclable Material @BenAllenCA @Laurafriedman43 @LorenaAD80

The tweet included a picture of the Arrowhead label with the "100% Recyclable" claim. This tweet was intended to inform the public regarding Defendants' false claims.

68.     On June 2, 2021, the official Twitter account of Arrowhead (@ArrowheadWater) responded, "While not every recycling center has the same capabilities, our cap and label are 100% recyclable. That's why we ask our consumers to replace the cap and leave the label on when dropping our bottles in the recycling bin!"

69.     On June 6, 2021, the Sierra Club Angeles Chapter, in direct response to Defendants' claims drafted and published an article on its website explaining to the public and its members the importance of passing SB 343 due to false claims such as "100% Recyclable" that appear on the Products.[18] The article specifically used photos of Defendants' Products as

---

[18] Simone Kufhal, *Truth in Recycling*, Sierra Club Angeles Chapter Website (June 7, 2021), https://angeles.sierraclub.org/news_conservation/blog/2021/06/truth_in_recycling (last accessed June 10, 2021).

examples of the false advertising that SB 343 is designed to combat.

70.     On June 15, 2021, the Sierra Club further disseminated the June 6, 2021 article to over five hundred club members and activists using an email alert.

71.     The Sierra Club will continue to advocate on behalf of the environment and to inform consumers about greenwashing and Defendants' false claims so that consumers can make informed purchasing decisions. If Defendants' misconduct described herein is not enjoined, the Sierra Club will be forced to continue to divert resources to inform the public about the false claims on Defendants' labels which frustrate the mission of the Sierra Club.

## CAUSES OF ACTION

72.     Plaintiff does not plead, and hereby disclaim, any causes of action under any regulations promulgated by the FTC. Plaintiff relies on these regulations only to the extent such regulations have been separately enacted as state law or regulations or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION

### "Greenwashing" Under the Environmental Marketing Claims Act, Cal. Bus. & Prof. Code § 17580, *et seq.*

73.     Plaintiff realleges and incorporate by reference the paragraphs of this Complaint as if set forth herein.

74.     Defendants' representations and omissions complained of herein constitute advertising that the Products are not harmful to, or are beneficial to, the natural environment, through the use the phrase "100% Recyclable." On information and belief, in violation of Cal. Bus. & Prof. Code §17580(a), Defendants have not maintained in written form in their records information and documentation supporting the validity of the representation, including but not limited to, any significant adverse environmental impacts directly associated with the production, distribution, use, and disposal of the Products.

75.     Further, in violation of Cal. Bus. & Prof. Code §17580.5(a), Defendants' representations and omissions complained of herein constitute untruthful, deceptive, or misleading environmental marketing claims, explicit or implied, including claims referenced in

the Green Guides published by the FTC.

76.     Plaintiff seeks a declaration that the above-described practices are fraudulent and/or unlawful.

77.     Plaintiff, on behalf of itself, its members, and the general public, seeks an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless packaging and marketing is modified to remove the misrepresentation "100% Recyclable" and to disclose the omitted facts about the true recyclability of the Products. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to Plaintiff and the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require Plaintiff to repeatedly and continuously seek legal redress in order to remediate its injury (i.e. diverted resources). Plaintiff and the general public have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFF'S SECOND CAUSE OF ACTION

### Unfair, Unlawful and Deceptive Trade Practices,

### Business and Professions Code § 17200, *et seq.*

78.     Plaintiff realleges and incorporate by reference the paragraphs of this Complaint as if set forth herein.

79.     Within four (4) years preceding the filing of this Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Complaint.

80.     In particular, Defendants have engaged, and continue to engage, in deceptive practices by, without limitation, the following:

    a.      deceptively representing that the Products are "100% Recyclable;" and

    b.      failing to disclose that the Products are not "100% Recyclable."

81.     Defendants' claims that the Products are 100% recyclable are material, untrue,

and misleading. These recyclable claims are prominent on all of the Products' marketing, advertising, and labeling materials, even though Defendants are aware that the claims are false and misleading. Defendants' claims are thus likely to deceive a reasonable consumer.

82.     Further, Defendants have engaged, and continue to engage, in unfair practices by, without limitation, advertising and marketing the Products as "100% Recyclable" when they are not, which is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and environment. By taking advantage of consumers concerned about the environmental impacts of plastic pollution, Defendants' conduct, as described herein, far outweighs the utility, if any, of such conduct.

83.     Additionally, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, the following:

        a.     violating the Federal Trade Commission Green Guides regulations, including, without limitation, 16 C.F.R. sections 260.3(b), 260.3(c), 260.12(b), 260.12(c), 260.12(d), 260.16(c), 260.1, and 260.2, as described herein; and

        b.     violating the Environmental Marketing Claims Act, Cal. Bus. & Prof. Code § 17580, *et seq.*, as described herein.

84.     Consumers rely to their detriment on Defendants' unfair, deceptive and unlawful business practices. Had the consumers been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) the Products.

85.     Defendants' acts and omissions are likely to deceive the general public.

86.     Defendants engaged in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

87.     The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

88. As a direct and proximate result of such actions Plaintiff has suffered and continues to suffer injury in fact and has lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, the Sierra Club has diverted significant resources to combat Defendants' misleading and false recycling claims (i.e. greenwashing) described in greater detail herein.

89. Plaintiff seeks a declaration that the above-described trade practices are fraudulent and/or unlawful.

90. Plaintiff seeks an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless the Product's packaging and marketing is modified to remove the misrepresentation "100% Recyclable" and to disclose the omitted facts about their true recyclability. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to Plaintiff and the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require Plaintiff to repeatedly and continuously seek legal redress in order to remediate its injury (i.e., diverted resources). Plaintiff, its members, and the general public have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sierra Club respectfully requests that the Court enter judgement against Defendants as follows:

A. An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

B. For reasonable attorneys' fees and the costs of suit incurred; and

C. For such further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: June 16, 2021   **GUTRIDE SAFIER LLP**

_/s/ Marie A. McCrary /s/_____
Marie McCrary, Esq.
Seth A. Safier, Esq.
100 Pine Street, Suite 1250
San Francisco, California 94111

Attorneys for Plaintiff